**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO. 11-CV-20853-KING

RICHARD I. FRIED,

Plaintiff,

v.

STIEFEL LABORATORIES, INC., a
Delaware corporation, CHARLES W. STIEFEL,
BRENT D. STIEFEL, TODD STIEFEL,
STEPHEN KARASICK, MICHAEL CORNELIUS,
MATT S. PATTULLO, and ANJAN MUKHERJEE,

Defendants.
_______________________________________/

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** comes before the Court upon Defendants' Motion to Dismiss Counts 4, 5, and 6 of the Complaint in their Entirety and Count 3 of the Complaint in Part (DE #7), filed April 29, 2011. The Court is fully briefed in this matter.[1] Defendants seek dismissal of the part of Count 3 related to the March 2008 sale of Stiefel Laboratories ("SLI" or the "Company") common stock, contending that Plaintiff Richard Fried ("Fried") did not plead facts for the federal securities law claim to survive a motion to dismiss. Defendants also argue that the state law claims in Counts 4-6 must be dismissed in their entirety. Upon consideration, the Court finds that Defendants' Motion must be granted in part.

[1] Plaintiff filed a Response (DE #15) on May 23, 2011, to which Defendants replied (DE #18) on June 10, 2011. Plaintiff filed a Sur–Reply (DE #25) on November 21, 2011.

## I. Factual Background

The above-styled action is related to a series of lawsuits filed against SLI. The Court has previously summarized the factual background of this matter. *See James Bacon v. Stiefel Laboratories, et al.*, 677 F. Supp. 2d 1331 (S.D. Fla 2010). In short, plaintiffs, current and former employees of Stiefel Laboratories, allege a far-ranging plan on the part of certain board members of Defendant Stiefel Laboratories to manipulate the employees' ownership over shares of the privately–held company. The Complaint alleges the purpose of this manipulation was to permit Defendants to profit improperly from Stiefel Laboratories' eventual sale, which had not been previously divulged to any of the current or former employees.

Plaintiff Fried was an employee of SLI and served as its Chief Financial Officer before amicably leaving the company in 1997. Under a plan for employees, Fried acquired 30.7881 shares of stock in SLI (the "ESBP stock"). Fried also acquired another 10 shares of the Company separate and apart from the ESBP stock (the "non-ESBP stock"). During his time at SLI, Fried developed a professional and close personal relationship with Charles Stiefel, who served as controlling shareholder, president, chief executive officer, and chairman of the board of directors at SLI at various times. Fried regularly requested Charles Stiefel's counsel and direction regarding management of his shares of stock in SLI. Like the plaintiffs in related cases, Fried sold his SLI stock prior to the Company's sale, receiving a much lower price per share than SLI received when the Company was sold to GlaxoSmithKline in July 2009.

Stiefel Laboratories, Inc., since its founding, been maintained as a privately-held, family-controlled operation. The founding partners have been very proud of the achievements of the corporation over the years as its status as a private corporation and had maintained publicly that it intended to so remain a family controlled operation. This policy was well known throughout the corporations. The employees relied upon the assurances of senior management that it had no intention to become a public corporation in the foreseeable future. An indication that a change in the long-held policy might be in the company's future occurred when, in August 2007, the Blackstone Group, an asset-management company that specializes in taking companies public, invested $500 million into the Company and received in return a new class of stock worth approximately $60,000 per share and a seat on the Company's board of directors.

In September 2007, around the time of the Blackstone Investment, Plaintiff Richard Fried met with Defendant Charles Stiefel for the express purpose of obtaining Charles Stiefel's advice on the valuation of Company stock and the impact of the Blackstone Investment on the annual valuation of SLI stock ("the Bogush Valuation"). (Compl., DE #1, at ¶73-74). Charles Stiefel represented to Richard Fried that the disparity between the valuation of the Company's common stock, pegged at approximately $60,000 per share as part of the Blackstone Investment process, did not mean that the Bogush Valuations were inaccurate. (Id. ¶¶ 75-76). Charles Stiefel also represented that the Blackstone Investment would not impact the Bogush Valuation for the coming year. (Id.). Stiefel did not disclose to Fried that Blackstone's preferred shares were convertible to common stock at a 1:1 ratio. (Id.)

Plaintiff alleges he relied upon these representations of the Bogush Valuations as the fair market value of common stock, and sold his non-ESBP stock to the Company on March 6, 2008 (the "March 2008 sale"), for $13,065 per share. (Id. ¶78). The price was set by applying a 10% discount to the most recent Bogush Valuation, which in this case was the March 31, 2007 per share valuation of $14,517. (Id.).

Fried and Charles Stiefel spoke again several times in Fall 2008 regarding Fried's stock. In October 2008, Charles Stiefel and Fried held a meeting in which they again, as repeatedly in past years, discussed valuation of the Company's stock and the outlook for the Company. (Id. ¶¶ 79-80). Charles Stiefel gave Fried a negative view of the Company's financial future and opined that the next Bogush Valuation would likely go lower in fair market valuation. (Id. ¶ 80). He did not disclosed the stock valuations SLI received as part of the Blackstone Investment. (Id.).

In late December 2008, Plaintiff requested and received a distribution of the shares of ESBP stock. (Id. ¶¶ 86-87). Neither Charles Stiefel nor any other Defendant disclosed to Fried that the process for sale of the Company had begun or that the Company would be meeting on December 22nd with a potential acquirer. (Id. ¶¶ 84-86). Had he known any of this information, Fried contends that he would not have put his ESBP stock to the Company. (Id. ¶ 93).

The stock was distributed to Plaintiff on or about December 29, 2008. (Id. ¶ 87). The accompanying cover letter, sent by Defendant Matt Pattullo acting as Plan Administrator, explained that Plaintiff had the option to put the stock to SLI during one of two 60-day windows. (Id.). The letter also explained that any sales proceeds would be

paid 20% in cash with the balance paid as a promissory note bearing interest at a 7.25% interest rate. (Id.).

On January 6, 2009, Fried submitted an order to put his shares to the Company. (Id. ¶ 89). In so doing, Fried relied on information from Charles Stiefel and the Company. (Id. ¶¶ 81-84, 95). On January 30, 2009, SLI sent a check and promissory note, bearing an interest rate of 3.25%, to Plaintiff. (Id. ¶ 91). Plaintiff claims that he complained to Charles that the interest rate of 3.25% on the promissory note was lower than was promised in Pattullo's letter but that no action was taken. (Id. ¶ 92).

Fried first discovered that the Company was for sale through a March 20, 2009 article in the *Wall Street Journal*. (Id. ¶ 94). After learning of the sale of SLI, Plaintiff contacted Charles and told him that he wanted the alleged loss he had suffered to be corrected. (Id. ¶ 87). Charles allegedly responded: "Given our long friendship, I will endeavor to come up with something that will make you happy." (Id. ¶ 96). Charles Stiefel also discussed several possible ways to resolve Plaintiff's concern, including Plaintiff filing a "friendly lawsuit." (Id. ¶ 98). Charles Stiefel and Fried met as previously scheduled on May 27, 2009 and developed three different approaches to compensate Fried's loss, intending to complete one of these approaches by the July 2009 closing of the sale of SLI. (Id. ¶ 98). By July, Charles Stiefel reported that despite his efforts, two of the three approaches could not be pursued. (Id. ¶ 99). When Fried brought up the third approach, a "friendly" lawsuit, Charles Stiefel requested Fried to not file a lawsuit since a lawsuit could derail the looming closing of the sale. (Id.). Charles Stiefel repeated his promise to Fried that he would be compensated in connection with the closing. (Id. ¶¶ 99-

101). Plaintiff did not file a lawsuit at that time. After the sale of the Company closed, Plaintiff allegedly followed up with Charles Stiefel about resuming the dialogue concerning his stock sales. Charles Stiefel told Plaintiff that he no longer held any position with SLI and thus could not be of assistance. (Id. ¶ 101).

Plaintiff filed the Complaint in this case on March 11, 2011, asserting various causes of action. Counts 1 and 2 allege breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1101 *et seq.*; Count 3 alleges violations of federal securities law against the Company and Charles Stiefel; Count 4 alleges breach of fiduciary duty under Florida law against Charles Stiefel and the Company; Count 5 alleges promissory estoppel under Florida law against Charles Stiefel and the Company; and Count 6 alleges fraud and civil conspiracy under Florida law against Charles Stiefel and the Company.

## II. Legal Standard

"For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom." *Omar ex rel. Cannon v. Lindsey,* 334 F.3d 1246, 1247 (11th Cir. 2003). A complaint may be dismissed if the facts as pleaded fail to state a claim to relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 560-61 (2007) (abrogating former "unless it appears beyond a doubt that the plaintiff can prove no set of facts" standard and replacing it with a standard requiring "only enough facts to state a claim to relief that is plausible on its face"); *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1037 (11th Cir. 2001) (en banc)

("Pleadings must be something more than an ... exercise in the conceivable.") (quoting *United States v. Students Challenging Regulatory Ag. Proc.*, 412 U.S. 669, 688 (1973)).

Finally, "[i]n analyzing the sufficiency of the complaint, [the Court] limit[s] [its] consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

## III. Discussion

In the instant Motion to Dismiss, Defendants argue that Counts 4, 5, and 6 should be dismissed in their entirety, and Count 3 should be dismissed to the extent it is based on Plaintiff's sale of non-ESBP stock. Each of Defendants' arguments will be addressed in turn.

### a. Count 3: Securities Fraud to the Extent It Is Premised on the Sale of Non-ESBP Stock

In Count 3, Plaintiff claims that Charles Stiefel and the Company violated federal securities law by misrepresenting and/or omitting material information relating to the Blackstone investment and its relationship to the March 31, 2008 valuation of ESBP stock. Defendants argue that Plaintiff's claim as to the sale of non-ESBP stock must be dismissed because the allegations do not establish any duty that was violated and fall far short of showing a strong inference of scienter, which is required under federal securities law. (Mot. to Dismiss, DE #7, at 7). The Court concludes that the Motion to Dismiss Count 3 should be denied.

This Court previously addressed a securities fraud claim in *Bacon.* 677 F. Supp. 2d 1331. In *Bacon,* this Court concluded that the plaintiffs made sufficient allegations to survive a motion to dismiss. The allegations in Count 3 of this above-styled action are similar to the allegations made in *Bacon.* Here, Defendants move for dismissal only of the claim to the extent it was premised on the sale of non-ESBP stock, as *Bacon* did not involve non-ESBP stock. Defendants argue that this distinction makes all the difference: "Because the non-ESBP stockholder had no put or other right to cause SLI to buy his shares, let alone to buy them at any given price, he was free to negotiate an alternative price and to obtain his own stock valuation expert to value his shares of non-ESBP stock." (DE #7, at 6).

The Complaint alleges that the Company historically used the Bogush Valuations of ESBP stock as the basis for its valuations of non–EBSP stock just as it ultimately did for Fried's non-ESBP stock in March 2008. (Compl. ¶¶ 41-48, 78, 87-88). Plaintiff argues that any commentary by the Company on ESBP stock necessarily equated to commentary on non-ESBP stock. (Pl.'s Resp., DE #15, at 10). Where a defendant does make voluntary statements, "it must speak completely to avoid 'half-truths.'" *In re Miller Indus. Sec. Litig.*, 120 F. Supp. 2d 1371, 1378 (N.D. Ga. 2000) (quoting *First Virginia Bankshares v. Benson*, 559 F.2d 1307, 1314 (5th Cir. 1977)). Indeed, in the Eleventh Circuit, "[a]duty to disclose may . . . be created by a defendant's previous decision to speak voluntarily. Where a defendant's failure to speak would render the defendant's own prior speech misleading or deceptive, a duty to disclose arises." *Clay v. Rivenvood Int'l*

*Corp.*, 157 F.3d 1259, 1268 (11th Cir. 1998) (quoting *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1043 (11th Cir. 1986)).

Here, Defendants voluntarily undertook a duty to disclose information to Plaintiff concerning both ESBP and non-ESBP stock and general corporate matters when they voluntarily counseled Fried over a period of years. (Compl. ¶¶ 51, 67-78). *See Rudolph v. Arthur Andersen & Co.*, 800 F.2d at 1043. Charles Stiefel had a history of private talks with Fried regarding the Company, including its financial health and status, opportunities and threats for it, and changes in the value of the Company's stock. (Id. ¶¶ 51-53, 67-78). Charles Stiefel advised Fried "on whether he should hold or sell his shares of stock in the Company" while Charles Pattullo and other officers had in the past likewise provided Fried with advice regarding his stock. (Id. ¶¶ 69-71). Plaintiff argues that Defendants' representations and freely given advice to Fried created a duty of disclosure that required Defendants to speak candidly in September 2007 and thereafter regarding the implications of the disparities between the Blackstone Investment valuation and the Bogush Valuation in terms of fair market value of the stock. (DE #15, at 9); *Affiliated Ute Citizens v. United States,*,406 U.S. 128, 152 (1972); *In re Miller Securities Litigation*, 120 F. Supp. 2d 1371, 1378 (N.D. Ga. 2000). As this Court found in *Bacon*, "although the Company had no generalized duty to disclose the merger discussions, the Company's communication of the stock price created a duty to disclose either the existence of the discussions or some other information that would have alerted Plaintiffs to the increased value of their stock." *Bacon*, 677 F. Supp. 2d at 1344.

Plaintiff also makes a successful showing of scienter. When evaluating scienter, a court must consider the entirety of the allegations contained in the complaint and not whether any individual allegation, scrutinized in isolation, meets that standard. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). The relevant inquiry is whether the complaint as a whole alleges facts linking the alleged fraudulent conduct to the "state of mind of the individual corporate official or officials who make or issue the [allegedly fraudulent] statement." *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1254 (11th Cir. 2008).

The scienter requirement for a federal securities fraud claim is "severe recklessness," which involves an omission that presents a danger of misleading buyers or sellers which is either known to the defendant or is so obvious that the defendant must have been aware of it. A "strong inference" is one that is at least as likely as any plausible inference. Plaintiff has met that burden here. Like in *Bacon*, "the allegations show that the defendants were severely reckless with respect to the falsity of the stock price because they either knew the true value was much higher, or, if they did not 'know,' the danger that the price was false was so obvious that they must have known, as it would be obvious to anyone that a merger with GlaxoSmithKline (after a $500 million infusion of capital from Blackstone) would significantly increase the price of the stock." *Bacon*, 677 F. Supp. 2d at 1345. Reading the Complaint in its entirety, the allegations strongly imply that the defendants acted with the requisite state of mind. Defendants have put forth no plausible opposing inference. Thus, Plaintiff has stated a claim under federal securities law.

**b. Count 4 and Count 6: Breach of Fiduciary Duty, Fraud and Civil Conspiracy Claims to the Extent They Are Premised on the Sale of the ESBP Stock.**

Defendants argue that the Court should dismiss as preempted by ERISA Plaintiff's state law claims for breach of fiduciary duty (Count 4) and Fraud and Civil Conspiracy (Count 6) to the extent they are premised on the sale of his ESBP stock. ERISA, which governs the ESBP stock, provides a statutory scheme in which federal law preempts state law. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. 8 1144(a). This broad provision is then tempered by the Savings Clause, which provides that "nothing in this title shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. 5 1144(b)(2)(A).

This Court conducted a thorough analysis of ERISA preemption of state law claims in the *Bacon* case. *See Bacon*, 677 F. Supp. 2d at 1346-1349. In sum, if a plaintiff seeks a remedy under state law that mirrors the remedy provided under ERISA, the state law claims must be dismissed. *See Anderson v. UNUM Provident Corp.*, 369 F.3d 1257, 1268 (11th Cir. 2004) ("Moreover, once rights and responsibilities under ERISA are invoked, overlapping state law claims are necessarily preempted since they may conflict with ERISA's elaborate system of employee protections."); *Corporate Health Ins., Inc. v. Texas Dept. of Ins.*, 215 F.3d 526, 539 (5th Cir. 2000) ("The saving clause does not operate if the state law at issue creates an alternative remedy for obtaining benefits under an ERISA plan."); *Parra v. John Alden Life Ins. Co.*, 22 F. Supp. 2d 1360, 1364–1365 (S.D. Fla. 1998) ("The Court's task, therefore, is not only to look at the state law that

Plaintiff is employing, but also, and more importantly, evaluate the remedy that Plaintiff is seeking. Because the remedy that Plaintiff seeks is the recovery of plan benefits, anti because this remedy can be obtained solely through section 502(a) of ERISA, Plaintiff cannot proceed under state law."); *Harrelson v. Blue Cross & Blue Shield of Ala.*, 150 F. Supp. 2d 1290, 1295 (M.D. Ala. 2001) ("Plaintiffs bad faith claim conflicts with ERISA's civil enforcement provision, § 1132(a), by creating an alternative remedy for obtaining benefits under an ERISA plan. Thus, as already stated, Plaintiffs bad faith claim is completely preempted."); *Bonnell v. Bank of Am.*, 284 F. Supp. 2d 1284, 1288 (D. Kan. 2003) ("Therefore, a state law is preempted if it adds to the judicial remedies available under ERISA.").

Here, like in *Bacon*, the rights Plaintiff seeks to enforce exist only because of the plan. Without the plan, Fried would have no cause of action for his state law claims relating to the ESBP stock. Therefore, the Court dismisses Counts 4 and 6 to the extent they are premised on the sale of ESBP stock.

**c. Count 4: Breach of Fiduciary Duty Claim to the Extent It Is Premised on the Sale of the Non-ESBP Stock**

Count 4 alleges breach of fiduciary duty against Charlie Stiefel and the Company.[2] Defendants argue Count 4 is also subject to dismissal because Charles Stiefel had no duty to disclose the merger discussions, did not receive a unique benefit, and there is no vicarious liability. (DE #7, at 12). In Response, Plaintiff argues that the duties discussed in Count 4 arise from both Charles Stiefel's confidential personal relationship with Fried,

[2] Plaintiff claims the Company is vicariously liable as Charles Stiefel's actions were on behalf of the Company as well as himself. (Compl. ¶ 140).

and Charles Stiefel's role as controlling shareholder and Fried's status as minority shareholder. (DE #15, at 17). Plaintiff contends that each of these bases of fiduciary duties independently prove that Charles Stiefel and the Company owed a fiduciary duty to Fried and therefore suffice to provide a cause of action. *Id.*

The Complaint alleges that Fried requested, received, and relied upon financial advice from a willing Charles Stiefel over the course of several years when Fried was an outside minority shareholder with almost no access to Company information other than what Charles Stiefel provided. (Compl., ¶134). Therefore, Count 4 sufficiently alleges prima facie facts supporting the existence of a confidential relationship as set forth in *Orlinsky v. Patraka*, 971 So.2d 796, 800 (Fla. 3d DCA 2007) ("To establish a general fiduciary relationship, 'a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.'" (quoting *Watkins v. NCNB Nat'l Bank of Fla., N.A.*, 622 So.2d 1063, 1065 (Fla. 3d DCA 1993)). *See also Treco Intern. S.A. v. Kromka*, 706 F. Supp. 2d 1283, 1288 (S.D. Fla. 2010).

Furthermore, Plaintiff alleges that as Controlling Shareholder, Charles Stiefel had fiduciary duties to disclose material information to Fried as a stockholder. (Compl., ¶135). Plaintiff contends that he, as an outsider and minority shareholder, was dependant upon Charles Stiefel as an accurate and timely source of information and advice. (Id. ¶ 136). Plaintiff alleges that Charles Stiefel breached his fiduciary duty to Fried through misrepresentations and omissions, inducing Fried to sell his Company stock at prices known by Charles Stiefel to be grossly understated. (Id. ¶ 137).

As discussed above and as this Court found in *Bacon*, "although the Company had no generalized duty to disclose the merger discussions, the Company's communication of the stock price created a duty to disclose either the existence of the discussions or some other information that would have alerted Plaintiffs to the increased value of their stock." *Bacon*, 677 F. Supp. 2d at 1344. Plaintiff has sufficiently alleged that Charles Stiefel and, by extension, the Company, owed him a fiduciary duty, which he breached. *See Treco Intern. S.A.*, 706 F. Supp. 2d at 1288 (accepting as sufficient plaintiffs' allegations that they placed [defendant] in a position of trust and confidence, that [defendant] accepted that position and promised to act in plaintiffs' best interests, and that [defendant] failed to do so). Therefore, the Court finds Plaintiff's allegations in Count 4 give rise to a breach of fiduciary duty claim.

**d. Count 6: Fraud and Civil Conspiracy Claims to the Extent They are Premised on the Sale of the Non-ESBP Stock**

Defendants argue that Plaintiff's claims in Count 6 relating to the non-ESBP shares fail, because Plaintiff's fraud allegations are insufficient, and Plaintiff's civil conspiracy claims fail as a matter of law. (DE #7, at 15-17).

*i. Fraud claims*

Defendants argue that Plaintiff's fraud claims against Todd and Brent Stiefel do not satisfy Rule 9(b)'s heightened pleading requirements, as the Complaint fails to allege any specific misrepresentation made by either Todd or Brent Stiefel and does nothing more than improperly lump the "Stiefel Defendants"—Charles, Todd, and Brent Stiefel - together when alleging what misstatements and omissions were made to Plaintiff. (DE

#7, at 16). "Where multiple parties are charged with fraud, the complaint must distinguish among defendants and specify their respective roles in the fraud. The allegations must alert defendants to the precise misconduct with which they are charged." *Leisure Founders v. CUC Int'l*, 833 F. Supp. 1562, 1575 (S.D. Fla. 1993). Additionally, Defendants argue that Plaintiff's fraud claims against SLI and Charles fail because (1) there was no duty to disclose any additional information about the Blackstone investment to Plaintiff; and (2) there was no representation that the price paid to Plaintiff for his 10 shares of non-ESBP stock represented "fair market value."[3] (DE #7, at 16).

Plaintiff responds that Count 6 must be reviewed with a relaxed standard of particularity under Rule 9(b). (DE #15, at 22). Where there are allegations of fraudulent concealment or omission on the part of a group, the heightened pleading requirements of Rule 9(b) are relaxed for the reason that the plaintiff simply does not have access to information needed to associate specific conduct with specific defendants. *Peters v. Amoco Oil Co.*, 57 F. Supp. 2d 1268, 1276–1277 (M.D. Ala. 1999). Plaintiff alleges the Stiefel Defendants are all family members, all shareholders, all Company officers, and all directors who together exercised voting and operational control over the board of directors and the Company's operations. (Compl. ¶¶ 9-11). Therefore, Plaintiff contends that this close–knit, family control group makes it exceedingly difficult for him to determine, especially prior to conducting any discovery, what fraudulent conduct is attributable to which of the Stiefel Defendants. (DE #15, at 23).

[3] See also, section a. *supra* pp. 7-10 for a discussion on the duty to disclose.

The Defendants are alleged in Count 6 to have "each" made untrue statements of fact and concealed material information regarding the Bogush Valuations and "the Blackstone Investment, the financial status of the Company, and plans and efforts to sell the Company" in order to effectively appropriate the actual value of Fried's stock. (Compl. ¶¶ 148–151); (DE #15, at 23). "Since Rule 9(b)'s purpose is to ensure the defendants are notified of the conduct complained of, alleged fraudulent acts need not be attributed to certain defendants if the 'complaint sufficiently describes the acts and provides defendants with sufficient information to answer the allegations.'" *General Cigar Co. v. CR Carriers, Inc.*, 948 F. Supp. 1030, 1037 (M.D. Ala. 1996) (quoting *Hinsdale Women's Clinic, S.C. v. Women's Health Care*, 690 F. Supp. 658, 663 (N.D. Ill. 1988)). Therefore, the Court finds that Plaintiff's allegations are sufficient to bring a fraud claim.

*ii. Civil conspiracy claims*

Defendants argue that the intra-corporate conspiracy doctrine mandates dismissal of the civil conspiracy claims. "Under the intra-corporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Nationwide Mut. Co. v. Ft. Myers Total Rehab Ctr., Inc.*, 657 F. Supp. 2d 1279, 1291 (M.D. Fla. 2009). "This rule applies unless an agent of the corporation 'has a personal stake in the activities that are separate and distinct from the corporation's interest.'" *Id.* (quoting *Cedar Hills Props. Corp. v. Eastern Fed Corp.*, 575 So.2d 673, 676 (Fla. 1st DCA 1991)). Thus, Fried's Complaint must allege that individual defendants have an interest separate and distinct from their

corporate interest as employees of SLI. *Nationwide Mut. Co,* 657 F. Supp. 2d at 1291. The Complaint must contain accusations which are sufficient to put the Defendants on notice as to how the actions of individual Defendants were at odds with rather than on behalf of, the corporation, to the point where the individuals' interests can be said to be separable and distinct from the corporation's. *Leisure Founders, Inc.*, 833 F. Supp. at 1575.

Plaintiff responds that the intra-corporate conspiracy doctrine does not apply, because the Stiefel Defendants are not mere outside directors with no other role in the Company, but instead formed the control group of shareholders and officers (president, vice presidents and chief executive officer) with direct operational control over the Company and who all acted on its behalf as its agents. (DE #15, at 24-25). The Court does not find Plaintiff's arguments persuasive. Rather, the Court concludes that the intra-corporate conspiracy doctrine precludes Plaintiff from bringing a civil conspiracy claim.

**e. Count 5: Promissory Estoppel**

To state a cause of action for promissory estoppel, it is necessary to show: 1) that a plaintiff detrimentally relied on a promise made by a defendant; 2) that a defendant reasonably should have expected the promise to induce reliance in the form of action or forbearance on the part of a plaintiff or a third person; and 3) that injustice can be avoided only by enforcement of the promise against a defendant. *W.R.Grace & Co. v. Geodata Services, Inc.*, 547 So.2d 919, 924 (Fla. 1989); *see also Morse, LLC v. United Wisconsin Life Ins. Co.*, 356 F. Supp. 2d 1296, 1300 (S.D. Fla. 2005). "[P]romissory estoppel does not turn on mutual assent to be bound in the same way as a contract claim. Rather, the

essence of promissory estoppel is detrimental reliance." *Financial Healthcare Associates, Inc.*, 488 F. Supp. 2d at 1237.

Defendants contend that Plaintiff's promissory estoppel claim fails as a matter of law for at least three reasons: 1) the alleged promises are too vague and indefinite as to reasonably induce reliance as a matter of law; 2) the alleged promise is a statement as to the present intention of Charles Stiefel with regard to a future act and, therefore, cannot serve as the basis for a promissory estoppel claim; and 3) except for asserting that he delayed filing a lawsuit, for which he alleges no prejudice, Plaintiff fails to allege he suffered any harm relying on Charles Stiefel's alleged promises. (DE #7, at 15).

Plaintiff responds that the cases relied upon by Defendants are distinguishable, as they involved situations where the plaintiffs challenged terms set forth in formal, written contractual documents, while Plaintiff's Count 5 relies upon promises made in oral and written communications. (DE #15, at 20). Plaintiff instead directs the Court to another case, *Uphoff v. Wachovia Sec., LLC,* No. 09–cv–80420, 2009 WL 5031345 (S.D. Fla. Dec. 14, 2009) (Marra, J.). In *Uphoff,* the district court held there was sufficient specificity to deny a motion to dismiss where "Plaintiff was promised a bonus in January as long as he stayed with the company after the sale." *Id.* at *5. The *Uphoff* court found that the Complaint's allegations that the defendants should have reasonably expected that the promise of the retention bonuses would induce plaintiff and the class members into remaining with the defendants' company and that plaintiff and the class members relied on that promised to their detriment and suffered the injustice of not receiving the retention bonus. *Id.* Plaintiff argues that in comparison to the facts alleged in *Uphoff,* Count 5 is

much more specific and definite and therefore requires that the Court deny the motion. (DE #15, at 21).

Plaintiff argues the Complaint clearly outlines the definite terms of performance Charles Stiefel promised to Fried: compensating Fried for his "loss," i.e., an amount equal to the difference between the share price paid to him and the share price paid to others after the sale of the Company. (DE #15, at 20). With closing of the sale of SLI looming in July 2009, Charles Stiefel and Fried acknowledged in their conversations the need to ensure that Fried's compensation was ready by the closing date. (Compl. ¶¶ 96, 98, 99). The method of compensation, however, was never definitely agreed upon by Fried and Charles Stiefel. Rather, Charles Stiefel "proposed three different ways to compensate Fried" in May 2009. (Id. ¶ 98). Plaintiff contends that there was detrimental reliance on Stiefel's promise to compensate Fried, because he did not file a lawsuit in 2009. (DE #25, at 7). Fried argues that he was harmed by not filing a lawsuit earlier, because he did not have beneficial use of the funds to which he is entitled, and a significant amount of interest has accrued on the principal amount of compensatory damages of over $2 million. (Id.).

Promissory estoppel, however, is an extraordinary remedy. *Solar Time Ltd. v. XL Specialty Ins. Co.*, No. 02–cv–23548, 2004 WL 1683149 at *6 (S.D. Fla. June 15, 2004) (Brown, J.). Looking at the third element of what is needed to state a cause of action for promissory estoppel, it is clear that Plaintiff's promissory estoppel claim fails as a matter of law. In the present case, it is not true that injustice can be avoided only by enforcement of the promise against Charles Stiefel. *See W. R. Grace,* 547 So.2d at 924.

While Plaintiff alleges that he relied upon Charles Stiefel's promise by not filing a lawsuit earlier, Plaintiff has filed a lawsuit now and can get justice if so merited.

Furthermore, there can be no promissory estoppel unless the terms of the promise are definite in relation to the remedy sought. *Vencor Hosps. v. Blue Cross Blue Shield of R.I.*, 284 F.3d 1174, 1185 (11th Cir. 2002) (applying Florida law). Such is not the case here. The Complaint alleges that Charles Stiefel and Plaintiff had conversations about finding a way to compensate Plaintiff, but the Court finds that those conversations were too indefinite as to induce reliance. (Compl. ¶ 95–101). An examination of the Complaint shows that the conversations between Charles Stiefel and Fried lacked "the definite and substantial character in relation to the remedy sought," which would allow Plaintiff to bring a promissory estoppel claim. *W. R. Grace,* 547 So.2d at 924 (quoting Restatement (Second) Contracts §90 (1979)). Therefore, the Court concludes that Plaintiff's allegations in Count 5 do not give rise to a promissory estoppel claim.

## IV. Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** as follows:

1. Defendants' Motion to Dismiss **(DE #7)** be, and the same is hereby, **GRANTED in part**. Counts IV and VI of Plaintiff's Complaint (DE #1), to the extent they relate to the sale of stock under ERISA, are **DISMISSED with prejudice**. Count VI with respect to the sale of non-ESBP stock and Count V are **DISMISSED without prejudice**.

2. In all other regards, Defendants' Motion to Dismiss **(DE #7)** be, and the same is hereby, **DENIED**.
3. Defendant shall **ANSWER** the remaining claims **within twenty (20) days** of the date of this Order.
4. Plaintiff shall have ten (10) days from the date of this Order to amend Count VI with respect to the sale of non-ESBP stock and Count V if desired. If any count is amended, Defendants will have twenty (20) days in which to file a responsive pleading.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 8th day of June, 2012.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Copies furnished to:

**Counsel for Plaintiffs**
**Stephen L. Wright**
Taylor Englisj Duma, LLP
1600 Parkwood Circle
Suite 400
Atlanta, GA 30339
678–336–7262
Email: swright@taylorenglish.com

**Norman S. Segall**
Segall/Gordich P.A.
801 Brickell Avenue
Suite 900
Miami, FL 33131
305–755–4930
Fax: 305–438–7438
Email: nss@segallgordich.com

**Counsel for Defendants**
**David A. Coulson**
Greenberg Traurig
333 NE 2 Avenue
Miami, FL 33131
305–579–0500
Fax: 305–579–0717
Email: coulsond@gtlaw.com

**Lindsey Camp Edelmann**
Greenberg Traurig
333 S.E. 2nd Ave
Miami, FL 33131
305–579–0754
Email: edelmannl@gtlaw.com